UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

|  |  |  |
|---|---|---|
| IN RE: | ) | CHAPTER 7 |
|  | ) |  |
| LARRY DARNELL GORE, JR., | ) | CASE NO. 21-51345-JRS |
|  | ) |  |
| Debtors. | ) |  |

-----------------------------------)----------------------------------------

|  |  |  |
|---|---|---|
| S. GREGORY HAYS, as Chapter 7 trustee, | ) |  |
|  | ) |  |
| Movant, | ) |  |
|  | ) |  |
| v. | ) | CONTESTED MATTER |
|  | ) |  |
| MIDFIRST BANK, NAVY FEDERAL CREDIT | ) |  |
| UNION, INTERNAL REVENUE SERVICE, | ) |  |
| GWINNETT COUNTY TAX | ) |  |
| COMMISSIONER, PEACEMAKER | ) |  |
| CONTRACTORS, LLC, and LARRY | ) |  |
| DARNELL GORE, JR., | ) |  |
|  | ) |  |
| Respondents. | ) |  |

**TRUSTEE'S MOTION FOR (I)  AUTHORITY TO (A) SELL PROPERTY OF THE BANKRUPTCY ESTATE FREE AND CLEAR OF ALL LIENS, INTERESTS, AND ENCUMBRANCES AND (B) DISBURSE CERTAIN PROCEEDS AT CLOSING; AND (II) ALLOWANCE AND AUTHORITY TO PAY ADMINISTRATIVE EXPENSE CLAIM**

COMES NOW S. Gregory Hays, as Chapter 7 Trustee ("**Trustee**") for the bankruptcy estate of Larry Darnell Gore, Jr. ("**Debtor**"), pursuant to 11 U.S.C. §§ 363(b), (f), and (m) and 503(b)(1), and Fed. R. Bankr. P. 2002(a)(2), 6004(a), 6004(c) and 9014, through undersigned counsel, and files *Trustee's Motion for (I) Authority to (A) Sell Property of the Bankruptcy Estate Free and Clear of All Liens, Interests and Encumbrances, and (B) Disburse Certain Proceeds at Closing; and (II) Allowance and Authority to Pay Administrative Expense Claim* (the "**Sale**

**Motion**"), respectfully showing:

### Venue and Jurisdiction

1.      This Court has jurisdiction over this Sale Motion under 28 U.S.C. §§ 157 and 1334.  Venue of this case in this District is proper under 28 U.S.C. §§ 1408 and 1409.  This Sale Motion is a core proceeding under 28 U.S.C. § 157(b)(2).

### Background

#### *a. General Background*

2.      On February 17, 2021 (the "**Petition Date**"), Debtor filed a voluntary petition for relief under Chapter 13 of Title 11 of the United States Code, initiating Case No. 21-51345-JRS (the "**Case**").

3.      Also on the Petition Date, Debtor filed under penalty of perjury his *Statement of Financial Affairs, Schedules "A"* through *"J",* and *Other Bankruptcy Documents* [Doc. No. 1] (the "**Schedules**").

4.      On September 24, 2021, Debtor filed a *Notice of Conversion of Case to Chapter 7 Under Section 1307(a).* [Doc. No. 35].

5.      The Case was converted to a proceeding under Chapter 7 on September 27, 2021. Trustee was thereafter appointed the duly acting Chapter 7 trustee in the Case under 11 U.S.C. § 701(a)(1), and he remains in this role.

6.      At the commencement of the Case, the bankruptcy estate was created under 11 U.S.C. § 541(a) (the "**Bankruptcy Estate**"), and the Bankruptcy Estate includes all Debtor's legal or equitable interests in property as of the commencement of the Case and any interest in property that the Bankruptcy Estate acquired after commencement of the Case.  11 U.S.C. §§ 541(a)(1) and (7).

7.      Trustee is the sole representative of the Bankruptcy Estate.  11 U.S.C. § 323(a).

8.      The duties of Trustee include his obligation to "collect and reduce to money the property of the estate . . . ." 11 U.S.C. § 704.

### b. The Property

9.      On the Petition Date, Debtor was the sole owner of record of that certain real property with a common address of 198 Melody Lane, Lawrenceville, Gwinnett County, Georgia 30043 (the "**Property**").

10.      On his *Schedule C: The Property You Claim as Exempt*, Debtor scheduled a homestead exemption in the Property in the amount of $21,500.00 under O.C.G.A. § 44-13-100(a)(1) (the "**Property Exemption**").  *See* [Doc. No. 1, page 15 of 55].

### c. Alleged Liens, Interests, and Encumbrances

11.      On his *Schedule D: Creditors Who Have Claims Secured by Property* [Doc. No. 1, page 18 of 55], Debtor scheduled two claims on or against the Property: (a) a mortgage in the amount of $41,497.00 in favor of Midland Mortgage and (b) a mortgage in the amount of $72,069.00 in favor of Navy Federal Credit Union.  Each of these entities filed proofs of claim in this Case in the amounts of $45,652.80 and $67,796.51, respectively

12.      Trustee has obtained a title report for the Property (the "**Title Report**"), which confirms the secured claims of Midland Mortgage a division of MidFirst Bank ("**MidFirst**") and Navy Federal Credit Union ("**Navy Federal**") in the Property.

13.      The Title Report also indicates that the Internal Revenue Service (the "**IRS**") may have a tax lien against the Property based on a tax assessed against In S. Song.  However, the previous owner of the Property who transferred the Property to Debtor was In Ahe Song and not In *S.* Song.  As a result, Trustee asserts that the IRS has no lien against the Property.

14.    The Title Report reflects no other liens, interests, or encumbrances on or against the Property except for an inchoate *ad valorem* real property taxe owed to the Gwinnett County Tax Commissioner ("**Gwinnett County**").

15.    On December 9, 2021, Trustee filed his *Application to Employ Real Estate Agent Under Listing Agreement* [Doc. No. 55], seeking authority to employ Humphries & King Realty and John V. Ball (collectively, the "**Broker**") as the listing agent for the Bankruptcy Estate, at a starting list price of $300,000.00 (the "**List Price**") with a six percent (6%) commission of the sale price. On December 10, 2021, the Court entered an *Order* [Doc. No. 56], authorizing Trustee's employment of the Broker.

### d. Post-Petition Damage and Repairs to Property

16.    Upon information and belief, on or about May 22, 2021, after the Petition Date, the Property was damaged by water, and Debtor contracted with Peacemaker Contractors, LLC ("**Peacemaker Contractors**") to mitigate the damage.

17.    Upon information and belief, and, again, after the Petition Date, Peacemaker Contractors repaired the damage and invoiced Debtor $13,983.84 for its services.  Trustee attaches a copy of the invoice of Peacemaker Contractors as Exhibit "B" to this Sale Motion.

18.    Upon information and belief, Travelers Home and Marine Insurance Company ("**Travelers**") insured the Property, and it delivered a check to Debtor in the amount of $12,638.47 for the services provided by Peacemaker Contractors.

19.    Upon information and belief, Debtor never paid the $12,638.47 (that Travelers gave to him) to Peacemaker Contractors, and he kept those funds for his own use.[1]

---

[1]    Trustee is attempting to resolve issues related to Debtor's taking of these funds.  He intends to hold Debtor's Property Exemption until he resolves these issues and subject to further order of the Court.

20.     The services of Peacemaker Contractors provided a concrete benefit to the Bankruptcy Estate as they returned the Property to a saleable condition.

### e. Filed Claims Against the Bankruptcy Estate

21.     The total of the filed claims against the Bankruptcy Estate is $396,753.94. $15,073.11 of these claims are filed as priority unsecured claims, and $220,847.20 of these claims are filed as non-priority, general unsecured claims.  The deadline to file proofs of claim was February 14, 2022.  [Doc. No. 47].

### Proposed Sale Free and Clear of All Liens, Claims, Interests, and Encumbrances

22.     After much negotiation, Trustee entered into a *Purchase and Sale Agreement* for the sale of the Property to Pho Huynh and Quoc Tran (the "**Purchasers**"), "as is, where is," for a sale price of $304,000.00 (the "**Purchase Price**"),[2] subject to Bankruptcy Court approval (the "**Contract**").   A true and correct copy of the Contract, as amended, is attached hereto and incorporated herein by reference as Exhibit "A."

23.     The Purchasers were procured through the efforts of Trustee and his Broker, are *bona fide* purchasers, and are not an insider of Debtor, Trustee, or the Broker.  The Purchasers will submit an earnest money deposit in the amount of $6,500.00.

24.     Trustee's proposed Contract for a Purchase Price of $304,000.00 is: (a) the highest and best offer that Trustee has received; and (b) an appropriate selling price for the Property.

25.     Subject to Bankruptcy Court approval, the closing of the sale of the Property is currently scheduled for June 23, 2023 (the "**Closing**").

---

[2]     The Purchase Price was originally $324,000.00; however, after an inspection and identified necessary repairs, the Purchasers requested a reduction to $304,000.00, which Trustee agreed to.

**Relief Requested**

26.    Trustee requests an order from the Court granting this Sale Motion; approving the Contract; and authorizing Trustee to sell, assign, and transfer the Bankruptcy Estate's right, title, and interest in and to the Property to Purchasers for a Purchase Price of $304,000.00 free and clear of all liens, claims, interests, and encumbrances but otherwise on an "as is, where is" with all faults basis.

27.    Trustee requests an order from the Court finding that Trustee and Purchasers have proceeded in good faith and that Trustee and Purchasers are entitled to the protections of 11 U.S.C. § 363(m).

28.    Trustee requests an order from the Court granting Peacemaker Contractors an administrative expense claim in the amount of $13,983.84 (the "**Administrative Expense Claim**") and authorizing Trustee to pay the Administrative Expense Claim from the proceeds of the proposed sale.

**Legal Analysis**

*a. Sale Free and Clear*

29.    Section 363 of the Bankruptcy Code authorizes a trustee "after notice and a hearing . . . [to] use, sell, or lease, other than in the ordinary course of business, property of the estate . . . ." 11 U.S.C. § 363(b)(1).  Section 105 of the Bankruptcy Code grants this Court the authority to "issue any order, process, or judgment necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a).

30.    The standard to grant a sale of property outside of the ordinary course of business is the sound business judgment of the trustee.  *In re Chateaugay*, 973 F.2d 141 (2d Cir. 1992);

*Stephens Indus. v. McClung*, 789 F.2d 386, 390 (6th Cir. 1986); *In re Abbotts Dairies of Penn., Inc.*, 788 F.2d 143 (3d Cir. 1986); *Committee of Equity Security Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1071 (2d Cir. 1983). In this regard, a trustee's showing need not be exhaustive; rather, a trustee is "simply required to justify the proposed disposition with sound business reason." *In re Baldwin United Corp.*, 43 B.R. 888, 906 (Bankr. S.D. Ohio 1984).

31. Applying these principles of law here, the Court should authorize the proposed sale because it will result in Trustee's making a meaningful distribution to unsecured creditors, and absent the proposed sale, such a significant distribution is unlikely.

32. In turn, Section 363(f) of the Bankruptcy Code authorizes a trustee to sell property under 11 U.S.C. § 363(b) free and clear of any interest in the subject property if, among other things, the price at which the property is to be sold is greater than the aggregate of the liens on such property, or if such interest is the subject of a bona fide dispute. 11 U.S.C. § 363(f). Specifically, that code section provides:

> (f) The trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if-
>
> > (1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;
> > (2) such entity consents;
> > (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
> > (4) such interest is in bona fide dispute; or
> > (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

*Id.*

33. As set forth above and below, Trustee can, under 11 U.S.C. § 363(f), sell the Property free and clear of all liens, claims, interests, and encumbrances with any lien (to the extent valid, perfected, enforceable, and unavoidable) attaching to the proceeds of the sale with

the same priority and extent as it had in the Property.

34.     MidFirst, Navy Federal, and Gwinnett County have the only valid liens on or against the Property, and, upon information and belief, the sum of those liens is less than $120,000.00.  The proposed Purchase Price is significantly greater than the amounts owed to these lienholders, satisfying Section 363(f)(3).

35.     In addition, the alleged lien of the IRS is no lien at all because it is owed by someone other than the "In Ahe Song" who transferred the Property to Debtor.  At the very least, it is the subject of a bona fide dispute, satisfying Section 363(f)(4).

36.     Notably, the proposed sale of the Property is not in the ordinary course of business, as allowed by 11 U.S.C. § 363(b). Any lien to the extent valid, perfected, enforceable and unavoidable will attach to the proceeds of the sale as provided by 11 U.S.C. § 363(f).

### b. Good Faith of Trustee and Purchasers

37.     Moreover, 11 U.S.C. § 363(m) provides that the reversal or modification on appeal of an authorization of a sale or lease of property does not affect the validity of the sale or lease under such authorization to an entity that purchased or leased the property in good faith. *See* 11 U.S.C. § 363(m).

38.     Although the Bankruptcy Code does not define good faith, courts have recognized that the kind of misconduct that would destroy a good faith status involves fraud, collusion between the purchaser and other offerors or the trustee, or an attempt to take grossly unfair advantage of other offerors.  *See In re Abbott Dairies of Pa., Inc.*, 788 F.2d 143, 147 (3d Cir. 1986).

39.     Trustee and Purchasers have proceeded in good faith, and the Purchasers are *bona fide,* good-faith purchasers and not insiders of Debtor, Trustee, or the Broker.  Consequently,

Trustee and Purchasers are entitled to the protections of 11 U.S.C. § 363(m).

### c. Administrative Expense Claim of Peacemaker Contractors

40.      Section 503(b) provides that "after notice and a hearing, there shall be allowed administrative expenses . . . the actual, necessary cost and expenses of preserving the estate including wages, salaries, or commission for services rendered after the commencement of the case . . . ." 11 U.S.C. § 503(b)(1)(A)(i). Because of the Bankruptcy Code's goal to equally distribute a debtor's assets to all creditors, requests for priority claims are narrowly construed to preserve assets for all creditors. *In re Enron Corp.*, 279 B.R. 695, 704 (Bankr. S.D.N.Y. 2002). The burden to prove that it is entitled to an administrative expense claim falls squarely on the movant. *See In re Bridgeport Plumbing Products, Inc.*, 178 B.R. 563 (Bankr. M.D. Ga. 1994); *In re Fulwood Enterprises, Inc.*, 149 B.R. 712, 715 (Bankr. M.D. Fla. 1993).

41.      To qualify as an administrative expense claim, not only must the "expense be 'actual' and 'necessary,' but also [there must be] a concrete benefit to the estate." *In re Beverage Canners Int'l Corp.*, 255 B.R. 89, 92 (Bankr. S.D. Fla. 2000) (*citing Broadcast Corp. of Georgia v. Broadfoot (In re Subscription Television of Greater Atlanta),* 789 F.2d 1530 (11th Cir. 1986)); *see also In re Enron Corp.*, 279 B.R. 79 (Bankr. S.D.NY. 2002); *In re Enron Corp.*, 279 B.R. 695 (Bankr. S.D.N.Y. 2002).

42.      In applying these principles of law to the facts here, it is clear that Peacemaker Contractors has provided a concrete benefit to the Bankruptcy Estate because it restored the Property after the Petition Date to a saleable condition. And, there will be sufficient funds to pay this claim at a closing of the proposed sale, so Trustee requests authority to do so at the Closing of the proposed sale.

**Request for Authority to Disburse Certain Proceeds at Closing**

43.     Trustee requests authority to have all sale proceeds paid to him at Closing and for authority to have paid at Closing: (a) the full loan payoffs to MidFirst and Navy Federal; (b) all outstanding *ad valorem* real property taxes owed to Gwinnett County (none anticipated); (c) the Bankruptcy Estate's pro-ration of the 2023 *ad valorem* county real property taxes owed to Gwinnett County; (d) the real estate commission of six percent (6%) of the Purchase Price in the amount of $18,240.00; (e) any capital gains or other taxes related to the sale (none anticipated); (f) water and sewer liens (none anticipated); (g) all other costs of sale, or costs necessary to close a sale of the Property; and (h) the Administrative Expense Claim of Peacemaker Contractors in the amount of $13,983.84.

44.     All other distributions will be made only upon further order of the Court. Notably, Trustee is not requesting authority to pay Debtor's Property Exemption because Trustee needs to resolve a dispute with Debtor related to his use of the funds paid to him by Travelers.

45.     To the extent funds are disbursed at Closing by a party other than Trustee, Trustee requests that such party be treated as Trustee's designated and authorized agent.

46.     Based on the above proposed distributions, Trustee estimates that the proposed sale will result in approximately $140,000.00 to $150,000.00 coming into the Bankruptcy Estate, all of which will be available to distribute in accordance with 11 U.S.C. § 726 (once Trustee resolves the dispute with Debtor related to the insurance proceeds from Travelers).    In other words, upon information and belief, the proposed sale of the Property to Purchasers will allow Trustee to make a meaningful distribution to holders of unsecured claims against the Bankruptcy Estate.

**Other Relief Requested**

47.     In addition, Trustee requests that the Court waive the stay of the order approving the proposed sale as authorized under Rule 6004(h) of the Federal Rules of Bankruptcy Procedure.

48.     Finally, following notice to all creditors and parties in interest of the Sale Motion and the date of the Hearing, Trustee invites any and all parties wishing to submit a competing cash bid which exceeds the present Contract by **at least $7,000.00,** supported by earnest money of **at least two percent (2%) of the bid price**, with no contingencies, and the ability to close within ten (10) days from Bankruptcy Court approval, so long as earnest money is paid to the Trustee in good funds and any such bid is filed with the Court in the form of an objection to the Sale Motion by the objection deadline set forth in the related notice of hearing and objection deadline filed contemporaneously herewith.

WHEREFORE, Trustee respectfully requests that the Court enter an Order:

(a)     Granting the Sale Motion;

(b)     Authorizing and approving the Contract and the sale of the Property free and clear of all liens, interests, and encumbrances;

(c)     Authorizing the distribution of certain proceeds at Closing, as set forth herein;

(d)     Finding that Purchasers are good faith purchasers and that Trustee and Purchasers are entitled to the protections of 11 U.S.C. § 363(m);

(e)     Authorizing the proposed sale to be consummated immediately as allowed by Federal Rules of Bankruptcy Procedure Rule 6004(h);

(f)     Approving the Administrative Expense Claim of Peacemaker Contractors and authorizing Trustee to pay the same at the Closing; and

(g)      Granting such other and further relief as the Court deems just or appropriate.

Respectfully submitted this 19th day of May, 2022.

ROUNTREE LEITMAN KLEIN & GEER LLC
*Attorneys for Trustee*

By:*/s/ Michael J. Bargar*

2987 Clairmont Road, Suite 350        Michael J. Bargar
Atlanta, GA 30329                     Georgia Bar No. 645709
404-410-1220                          mbargar@rlkglaw.com

**EXHIBIT "A" FOLLOWS**

# PURCHASE AND SALE AGREEMENT

**Offer Date:** _____ ~~02/23/2023~~ 4/30/2023 _____



**2023 Printing**

## A. KEY TERMS AND CONDITIONS

**1. Purchase and Sale.** The undersigned buyer(s) ("Buyer") agree to buy and the undersigned seller(s) ("Seller") agree to sell the real property described below including all fixtures, improvements and landscaping therein ("Property") on the terms and conditions set forth in this Agreement.

  **a. Property Identification:** Address _____ 198 Melody Lane _____

  City __Lawrenceville__, County __Gwinnett__, Georgia, Zip Code __30043__

  MLS Number: __7194231__ Tax Parcel I.D. Number __R7029-347__

  **b. Legal Description:** The legal description of the Property is *[select one of the following below]*:

    ☑ (1) attached as an exhibit hereto;

    ☐ (2) Condominium (attach F204 Condominium Resale Purchase and Sale Exhibit)

    ☐ (3) the same as described in Deed Book _____, Page _____, et. seq., of the land records of the above county; **OR**

    ☐ (4) Land Lot(s) _____ of the _____ District, _____ Section/ GMD,

    Lot _____, Block _____, Unit _____, Phase/Section _____

    of __Collins Hill Heights__ Subdivision/Development, according to the plat recorded in Plat Book _____, Page _____, et. seq., of the land records of the above county.

**2. Purchase Price of Property to be Paid by Buyer.**
$ 324,000.00

**3. Closing Costs.**
Seller's Contribution at Closing: $ 0.00

**4. Closing Date and Possession.**
Closing Date shall be __6/30/2023__ with possession of the Property transferred to Buyer
☑ upon Closing **OR** ☐ _____ days after Closing at _____ o'clock ☐ AM **OR** ☐ PM (attach F219 Temporary Occupancy Agreement).

**5. Closing Law Firm.**   **Phone Number:**
Campbell & Brannon - Glenridge

**6. Holder of Earnest Money ("Holder").** (If Holder is Closing Attorney, F510 must be attached as an exhibit hereto, and F511 must be signed by Closing Attorney.) Campbell & Brannon - Glenridge

**7. Earnest Money.** Earnest Money shall be paid by ☑ check ☐ ACH ☐ cash or ☑ wire transfer of immediately available funds as follows:

  ☐ **a.** $ _____ as of the Offer Date.

  ☑ **b.** $ 6,500.00 _____ within __3__ days from the Binding Agreement Date.

  ☐ **c.**

**8. Inspection and Due Diligence.**

  **a. Due Diligence Period:** Property is being sold subject to a Due Diligence Period of __5__ days from the Binding Agreement Date.

  **b. Option Payment for Due Diligence Period:** In consideration of Seller granting Buyer the option to terminate this Agreement, Buyer

    (1) has paid Seller $10.00 in nonrefundable option money, the receipt and sufficiency of which is hereby acknowledged; plus

    (2) shall pay directly to Seller additional option money of $ _____ by ☐ check ☐ ACH or ☐ wire transfer of immediately available funds either ☐ as of the Offer Date; **OR** ☐ within _____ days from the Binding Agreement Date. Any additional option money paid by Buyer to Seller ☐ shall (subject to lender approval) or ☐ shall not be applied toward the purchase price at closing and shall not be refundable to Buyer unless the closing fails to occur due to the default of the Seller.

**9. Lead-Based Paint.** To the best of Seller's knowledge, the residential dwelling(s) on the Property (including any portion thereof or painted fixture therein) ☐ was (attach F316 Lead-Based Paint Exhibit) **OR** ☑ was not built prior to 1978.

**10. Brokerage Relationships in this Transaction.**

  **a. Buyer's Broker is** US Great Homes Realty, LLC **and is:**
    (1) ☑ representing Buyer as a client.
    (2) ☐ working with Buyer as a customer.
    (3) ☐ acting as a dual agent representing Buyer and Seller.
    (4) ☐ acting as a designated agent where:
    _____ has been assigned to exclusively represent Buyer.

  **b. Seller's Broker is** Humphries & King Realty **and is:**
    (1) ☑ representing Seller as a client.
    (2) ☐ working with Seller as a customer.
    (3) ☐ acting as a dual agent representing Buyer and Seller.
    (4) ☐ acting as a designated agent where:
    _____ has been assigned to exclusively represent Seller.

  **c. Material Relationship Disclosure:** The material relationships required to be disclosed by either Broker are as follows:
None

**11. Time Limit of Offer.** The Offer set forth herein expires at 11:59 o'clock P .m. on the date 05/14/2023

Buyer(s) Initials _____ _____   Seller(s) Initials _____ _____

THIS FORM IS COPYRIGHTED AND MAY ONLY BE USED IN REAL ESTATE TRANSACTIONS IN WHICH John Ball IS INVOLVED AS A REAL ESTATE LICENSEE. UNAUTHORIZED USE OF THE FORM MAY RESULT IN LEGAL SANCTIONS BEING BROUGHT AGAINST THE USER AND SHOULD BE REPORTED TO THE GEORGIA ASSOCIATION OF REALTORS® AT (770) 451-1831.
Copyright© 2023 by Georgia Association of REALTORS®, Inc.

**B. FURTHER EXPLANATIONS TO CORRESPONDING PARAGRAPHS IN SECTION A.**    Trustee

1. **Purchase and Sale.**

   a. **Warranty:** Seller warrants that at the time of closing Seller will convey good and marketable title to said Property by limited warranty deed subject only to: (1) zoning; (2) general utility, sewer, and drainage easements of record as of the Binding Agreement Date and upon which the improvements (other than any driveway or walkway) do not encroach; (3) declarations of condominium and declarations of covenants, conditions and restrictions of record on the Binding Agreement Date; and (4) leases and other encumbrances specified in this Agreement. Buyer agrees to assume Seller's responsibilities in any leases specified in this Agreement.

   b. **Examination:** Buyer may examine title and/or obtain a survey of the Property and furnish Seller with a written statement of title objections at or prior to the closing. If Seller fails or is unable to satisfy valid title objections at or prior to the closing or any unilateral extension thereof, which would prevent the Seller from conveying good and marketable title to the Property, then Buyer, among its other remedies, may terminate the Agreement without penalty upon written notice to Seller. Good and marketable title as used herein shall mean title which a title insurance company licensed to do business in Georgia will insure at its regular rates, subject only to standard exceptions.

   c. **Title Insurance:** Buyer hereby directs any mortgage lender involved in this transaction to quote the cost of title insurance based upon the presumption that Buyer will be obtaining an enhanced title insurance policy since such a policy affords Buyer greater coverage.

2. **Purchase Price to be Paid by Buyer.** The Purchase Price shall be paid in U.S. Dollars at closing by wire transfer of immediately available funds, or such other form of payment acceptable to the closing attorney.

3. **Closing Costs.**

   a. **Seller's Contribution at Closing:** At closing, Seller shall make the referenced Seller's Monetary Contribution which Buyer may use to pay any cost or expense of Buyer related to this transaction, including without limitation, any commission obligations of Buyer. Buyer acknowledges that Buyer's mortgage lender(s) may not allow the Seller's Monetary Contribution, or the full amount thereof, to be used for some costs or expenses. In such event, any unused portion of the Seller's Monetary Contribution shall remain the property of the Seller. The Seller shall pay the fees and costs of the closing attorney: (1) to prepare and record title curative documents; (2) for Seller not attending the closing in person; and (3) payoff and proceeds handling and delivery.

   b. **Items Paid by Buyer:** At closing, Buyer shall pay: (1) Georgia property transfer tax; (2) the cost to search title and tax records and prepare the limited warranty deed; (3) all other costs, fees and charges to close this transaction, except as otherwise provided herein; and (4) all other title fees and post-closing fees.

   c. **Prorations:** Ad valorem property taxes, community association fees, solid waste and governmental fees and utility bills for which service cannot be terminated as of the date of closing shall be prorated as of the date of closing. Notwithstanding any provision to the contrary, in the event ad valorem property taxes are based upon an estimated tax bill or tax bill under appeal, Buyer and Seller shall, upon the issuance of the actual tax bill or the appeal being resolved, promptly make such financial adjustments between themselves as are necessary to correctly prorate the tax bill. In the event there are tax savings resulting from a tax appeal, third party professional costs to handle the appeal may be deducted from the savings for that tax year before re-prorating. Any pending tax appeal for the year in which the Property is sold shall be deemed assigned to Buyer at closing. The liability to the county and if applicable, city, in which the Property is located for ad valorem real property taxes for the year in which the Property is sold shall be assumed by Buyer upon the Closing of the Property. Buyer agrees to indemnify Seller against any and all claims of the county and if applicable, city, for unpaid ad valorem real property taxes for the year in which the Property is sold.

4. **Closing Date and Possession.**

   a. **Right to Extend the Closing Date:** Buyer or Seller may unilaterally extend the closing date for eight (8) days upon notice to the other party given prior to or on the date of closing if: (1) Seller cannot satisfy valid title objections (excluding title objections that: (a) can be satisfied through the payment of money or by bonding off the same; and (b) do not prevent Seller from conveying good and marketable title, as that term is defined herein, to the Property); (2) Buyer's mortgage lender (including in transactions where the financing contingency has expired) or the closing attorney is delayed and cannot fulfill their respective obligations by the date of closing, provided that the delay is not caused by Buyer; or (3) Buyer has not received required estimates or disclosures and Buyer is prohibited from closing under federal regulations. The party unilaterally extending the closing date shall state the basis for the delay in the notice of extension. If the right to unilaterally extend the closing date is exercised once by either the Buyer or Seller, the right shall thereafter terminate.

   b. **Keys and Openers:** At Closing, Seller shall provide Buyer with all keys, door openers, codes and other similar equipment pertaining to the Property.

5. ~~Closing Law Firm. Buyer shall have the right to select the closing attorney to close this transaction, and hereby selects the closing attorney referenced herein. In all cases where an individual closing attorney is named in this Agreement but the closing attorney is employed by, or an owner, shareholder, or member in a law firm, the law firm shall be deemed to be the closing attorney. If Buyer's mortgage lender refuses to allow that closing attorney to close the transaction, Buyer shall select a different closing attorney acceptable to the mortgage lender. The closing attorney shall represent the mortgage lender in any transaction in which the Buyer obtains mortgage financing; in transactions where the Buyer does not obtain mortgage financing, the closing attorney shall represent the Buyer in preparing the Closing documents, attempting to clear title of the Property to the satisfaction of the title insurance company, conducting the Closing, disbursing funds according to the settlement statement and, if applicable, preparing the closing attorney's title opinion and issuing a title insurance policy. Other than those services specifically noted above, nothing herein shall obligate the closing attorney to perform the legal services, including but not limited to, certifying or warranting title of the Property, for the Buyer except pursuant to a separate engagement agreement signed by the closing attorney and the Buyer.~~

6. **Holder of Earnest Money.** The earnest money will be paid to Holder in a method of payment acceptable to the Holder. Holder has the right to charge Buyer for any cost associated with receiving of earnest money. Such charge shall be collected separately from the payment of earnest money. The earnest money will be deposited into Holder's escrow/trust account (with Holder being permitted to retain the interest if the account is interest bearing) not later than: (a) five (5) banking days after the Binding Agreement Date hereunder or (b) five (5) banking days after the date it is actually received if it is received after the Binding Agreement Date. If Buyer writes a check or pays with an ACH for earnest money and the same is deposited into Holder's escrow/trust account, Holder shall not return the earnest money until the check or ACH has cleared the account on which the check was written or from which the ACH was sent. In the event any earnest money check is dishonored by the bank upon which it is drawn, or earnest money is not timely paid, Holder shall promptly give notice of the same to Buyer and Seller. Buyer shall have three (3) banking days from the date of receiving the notice to cure the default and if Buyer does not do so, Seller may within seven (7) days thereafter terminate this Agreement upon notice to Buyer. If Seller fails to terminate the Agreement timely, Seller's right to terminate based on the default shall be waived.

7. **Earnest Money.**
   a. **Entitlement to Earnest Money:** Subject to the paragraph below, Buyer shall be entitled to the earnest money upon the: (1) failure of the parties to enter into a binding agreement; (2) failure of any unexpired contingency or condition to which this Agreement is subject; (3) termination of this Agreement due to the default of Seller; or (4) termination of this Agreement in accordance with a specific right to terminate set forth in the Agreement. Otherwise, the earnest money shall be applied towards the purchase price of the Property at closing or if other funds are used to pay the purchase price then the earnest money shall be returned to Buyer.
   b. **Disbursement of Earnest Money:** Holder shall disburse the earnest money upon: (1) the closing of Property; (2) a subsequent written agreement of Buyer and Seller; (3) an order of a court or arbitrator having jurisdiction over any dispute involving the earnest money; or (4) the failure of the parties to enter into a binding agreement (where there is no dispute over the formation or enforceability of the Agreement). In addition, Holder may disburse the earnest money upon a reasonable interpretation of the Agreement, provided that Holder first gives all parties at least ten (10) days notice stating to whom and why the disbursement will be made. Any party may object to the proposed disbursement by giving written notice of the same to Holder within the ten (10) day notice period. Objections not timely made in writing shall be deemed waived. If Holder receives an objection and, after considering it, decides to disburse the earnest money as originally proposed, Holder may do so and send notice to the parties of Holder's action. If Holder decides to modify its proposed disbursement, Holder shall first send a new ten (10) day notice to the parties stating the rationale for the modification and to whom the disbursement will now be made. Holder shall disburse the earnest money to Seller by check in the event Holder: (1) makes a reasonable interpretation of the Agreement that the Agreement has been terminated due to Buyer's default; and (2) sends the required ten (10) day notice of the proposed disbursement to Buyer and Seller. The above-referenced check shall constitute liquidated damages in full settlement of all claims of Seller against Buyer and the Brokers in this transaction. Holder may require Seller to sign a W-9 before issuing a check to Seller for liquidated damages of $600 or more. Such liquidated damages are a reasonable pre-estimate of Seller's actual damages, which damages the parties agree are difficult to ascertain and are not a penalty.
   c. **Interpleader:** If an earnest money dispute cannot be resolved after a reasonable time, Holder may interplead the earnest money into a court of competent jurisdiction if Holder is unsure who is entitled to the earnest money. Holder shall be reimbursed for and may deduct its costs, expenses and reasonable attorney's fees from any funds interpleaded. The prevailing defendant in the interpleader lawsuit shall be entitled to collect its attorney's fees, court costs and the amount deducted by Holder to cover Holder's costs and expenses from the non-prevailing defendant.
   d. **Hold Harmless:** All parties hereby covenant and agree to: (1) indemnify and hold Holder harmless from and against all claims, injuries, suits and damages (collectively, "Claims") arising out of the performance by Holder of its duties, including Claims caused, in whole or in part, by the negligence of the Holder; (2) not to sue Holder for any decision of Holder to disburse earnest money in accordance with this Agreement.

8. **Inspection and Due Diligence.**
   a. **Buyer's Right to Inspect Property:** Unless otherwise specified herein, the Property is being sold in "as-is" condition with any and all faults. Therefore, Buyer and/or Buyer's representative(s) have the right to carefully inspect the Property to make sure it meets the needs of the Buyer. **If Buyer is concerned that the Property may have been used as a laboratory for the production of methamphetamine, or as a dumpsite for the same, Buyer should review the National Clandestine Laboratory Register – Georgia at www.dea.gov.**
   b. **Buyer's Right to Inspect Neighborhood:** In every neighborhood there are conditions which different buyers may find objectionable. Buyer is solely responsible for becoming familiar with neighborhood conditions of concern to Buyer that could affect the Property such as landfills, quarries, power lines, airports, cemeteries, prisons, stadiums, odor and noise producing activities, crime and school, land use, government and transportation maps and plans. **If Buyer is concerned about the possibility of a registered sex offender residing in a neighborhood in which Buyer is interested, Buyer should review the Georgia Violent Sex Offender Registry available on the Georgia Bureau of Investigation Website at www.gbi.georgia.gov.**
   c. **Buyer's Inspection Rights Continue through Closing:** Upon prior notice to Seller, Buyer and/or Buyer's representatives shall have the continuing right through Closing to enter the Property at Buyer's expense and at reasonable times to, among other things, and without limitation, conduct inspections, examinations, evaluations, appraisals, surveys and tests, meet contractors and vendors, measure for renovations, determine the condition of the Property and confirm that any agreed upon repairs have been made. Seller shall cause all utilities, systems and equipment to be on so that Buyer may complete all inspections.
   d. **Buyer's Inspection Indemnification Obligations: Buyer agrees to hold Seller and all Brokers harmless from all claims, injuries and damages related to the exercise of the above inspection rights by Buyer and Buyer's representatives, and Buyer shall promptly pay Seller the actual cost to restore any portion of the Property damaged or disturbed from testing or other evaluations to a condition equal to or better than the condition it was prior to such testing or evaluations.**

e. **Lead-Based Paint Hazard Evaluation:** If any portion of the Property was built prior to 1978, the Lead-Based Paint Exhibit (F316) is hereby attached as an Exhibit to the Agreement. Buyer shall have the right to conduct a lead hazard evaluation within ten (10) days from the Binding Agreement Date (or other mutually agreed upon time period) and to terminate this Agreement without penalty upon notice to Seller if lead-based paint and/or lead hazards are found (unless these rights are waived by Buyer in the Lead-Based Paint Exhibit (F316)). If the Lead-Based Paint Exhibit (F316) gives Buyer the right to terminate this Agreement if lead-based paint or lead hazards are found and such notice of termination is not given within ten (10) days from Binding Agreement Date (or other mutually agreed upon time period), the right to terminate for lead-based paint and/or lead hazards shall be waived.

f. **Due Diligence Period:** If the Property is being sold subject to a Due Diligence Period, then: a) this Agreement shall be an option contract during which time Buyer shall have the option, for any reason or for no reason, to terminate this Agreement upon notice to the Seller given prior to the expiration of the Due Diligence Period, in which case Buyer shall be entitled to a return of Buyer's earnest money without penalty; b) Buyer may, during the Due Diligence Period, seek to amend this Agreement to address any concerns Buyer has with the Property or this Agreement; and c) if Buyer has not terminated this Agreement as set forth above, Buyer shall accept the Property in "as-is" condition, subject to any amendment to this Agreement to address concerns agreed to by the parties.

g. ~~**Seller's Duty to Disclose:** Seller shall disclose to Buyer any and all known latent or hidden defects in the Property that could not be discovered by the Buyer during a reasonably careful inspection of the Property.~~

h. ~~**Warranties Transfer:** Seller agrees to transfer to Buyer at closing, subject to Buyer's acknowledgement of and consent, if there is any cost associated with said transfer), Seller's interest in any existing manufacturer's warranties, service contracts, termite treatment and/or repair guarantee and/or other similar warranties which, by their terms, may be transferable to Buyer.~~

i. **Repairs:** All agreed upon repairs and replacements shall be performed in a good and workmanlike manner prior to Closing unless otherwise agreed to in writing by the Buyer and Seller.

9. **Lead-Based Paint.** If any portion of a residential dwelling on the Property was built prior to 1978, the Lead-Based Paint Exhibit (F316) is hereby attached as an exhibit to this Agreement. The term "residential dwelling" includes any painted fixture or material used therein that was built or manufactured prior to 1978.

10. **Brokerage Relationships in this Transaction.**

a. **Agency Disclosure:** No Broker in this transaction shall owe any duty to Buyer or Seller greater than what is set forth in their brokerage engagements and the Brokerage Relationships in Real Estate Transactions Act, O.C.G.A. § 10-6A-1 et. seq.;

   **(1) No Agency Relationship:** Buyer and Seller acknowledge that: a) if they are not represented by Brokers in a client relationship, they are each solely responsible for protecting their own interests, and that Broker's role is limited to performing ministerial acts for that party; and b) if the same brokerage firm is representing one party as a client and working with the other party as a customer, the Broker and all of Broker's affiliated licensees are representing the client.

   **(2) Consent to Dual Agency:** If Broker is acting as dual agent in this transaction, Buyer and Seller consent to the same and acknowledge having been advised of the following:

      **i. Dual Agency Disclosure:** *[Applicable only if Broker is acting as a dual agent in this transaction.]*

        (a) As a dual agent, Broker is representing two clients whose interests are or at times could be different or even adverse;

        (b) Broker will disclose all adverse material facts relevant to the transaction and actually known to the dual agent to all parties in the transaction except for information made confidential by request or instructions from each client which is not otherwise required to be disclosed by law;

        (c) Buyer and Seller do not have to consent to dual agency and the consent of Buyer and Seller to dual agency has been given voluntarily and the parties have read and understand their brokerage engagement agreements;

        (d) Notwithstanding any provision to the contrary contained herein Buyer and Seller each hereby direct Broker while acting as a dual agent to keep confidential and not reveal to the other party any information which could materially and adversely affect their negotiating position.

      **ii. Designated Agency Disclosure:** If Broker in this transaction is acting as a designated agent, Buyer and Seller consent to the same and acknowledge that each designated agent shall exclusively represent the party to whom each has been assigned as a client and shall not represent in this transaction the client assigned to the other designated agent.

b. **Brokerage:** Unless otherwise specified herein, the real estate commissions owing to the Seller's Broker and Buyer's Broker, if any, are being paid pursuant to separate brokerage engagement agreements. Buyer and Seller agree that any commissions to be paid to Broker(s) shall be shown on the settlement statement and collected by closing attorney as a pre-condition to Buyer and Seller closing on the Property so long as the same is permitted by Buyer's mortgage lender, if any. The closing attorney is hereby authorized and directed to pay the Broker(s) at closing, their respective commissions pursuant to written instructions from the Broker(s) at closing, their respective commissions pursuant to written instructions from the Broker(s). If the sale proceeds are insufficient to pay the full commission, the party owing the commission shall pay any shortfall at closing. The acceptance by the Broker(s) of a partial real estate commission at the closing shall not relieve the party owing the same from paying the remainder after the closing (unless the Broker(s) have expressly agreed in writing to accept the amount paid in full satisfaction of the Broker(s) claim to a commission). The Brokers herein are signing this Agreement to reflect their role in this transaction and consent to act as Holder if either of them are named as such. This Agreement and any amendment thereto shall be enforceable even without the signature of any Broker referenced herein. The broker(s) are express third-party beneficiaries to this Agreement.

c. **Disclaimer:** Buyer and Seller have not relied upon any advice or representations of Brokers other than what is included in this Agreement. Brokers shall have no duty to inspect the Property or to advise Buyer or Seller on any matter relating to the Property which could have been revealed through a survey, appraisal, title search, Official Georgia Wood Infestation Report, utility bill review, septic system inspection, well water test, tests for radon, asbestos, mold, methamphetamine, and lead-based paint; moisture test of stucco or synthetic stucco, inspection of the Property by a professional, construction expert, structural engineer or environmental engineer; review of this Agreement and transaction by an attorney, financial planner, mortgage consultant or tax consultant; and consulting appropriate governmental officials to determine, among other things and without limitation, the zoning of Property, the propensity of the Property to flood, flood zone certifications, whether any condemnation action is pending or has been filed or other nearby governmental improvements are planned. Buyer and Seller acknowledge that Broker does not perform or have expertise in any of the above tests, inspections, and reviews or in any of the matters handled by the professionals referenced above. Buyer and Seller should seek independent expert advice regarding any matter of concern to them relative to the Property and this Agreement. Buyer and Seller acknowledge that Broker shall not be responsible to monitor, supervise, or inspect any construction or repairs to Property and such tasks clearly fall outside the scope of real estate brokerage services. If Broker has written any special stipulations herein, the party for whom such special stipulations were written: a) confirms that each such stipulation reflects the party's complete understanding as to the substance and form of the special stipulations; b) hereby adopts each special stipulation as the original work of the party; and c) hereby agrees to indemnify and hold Broker who prepared the stipulation harmless from any and all claims, causes of action, suits, and damages arising out of or relating to such special stipulation. Buyer acknowledges that when and if Broker answers a question of Buyer or otherwise describes some aspect of the Property or the transaction, Broker is doing so based upon information provided by Seller rather than the independent knowledge of Broker (unless Broker makes an independent written disclosure to the contrary).

11. <u>Time Limit of Offer.</u> The Time Limit of the Offer shall be the date and time referenced herein when the Offer expires unless prior to that date and time both of the following have occurred: (a) the Offer has been accepted by the party to whom the Offer was made; and (b) notice of acceptance of the Offer has been delivered to the party who made the Offer.

## C. OTHER TERMS AND CONDITIONS

1. <u>Notices.</u>
   a. **Generally:** All notices given hereunder shall be in writing, legible and signed by the party giving the notice. In the event of a dispute regarding notice, the burden shall be on the party giving notice to prove delivery. The requirements of this notice paragraph shall apply even prior to this Agreement becoming binding. Notices shall only be delivered: (1) in person; (2) by courier, overnight delivery service or by certified or registered U.S. mail (hereinafter collectively "Delivery Service"); or (3) by e-mail or facsimile. The person delivering or sending the written notice signed by a party may be someone other than that party.
   b. **Delivery of Notice:** A notice to a party shall be deemed to have been delivered and received upon the earliest of the following to occur: (1) the actual receipt of the written notice by a party; (2) in the case of delivery by a Delivery Service, when the written notice is delivered to an address of a party set forth herein (or subsequently provided by the party following the notice provisions herein), provided that a record of the delivery is created; (3) in the case of delivery electronically, on the date and time the written notice is electronically sent to an e-mail address or facsimile number of a party herein (or subsequently provided by the party following the notice provisions herein) even if it is not opened by the recipient. Notice to a party shall not be effective unless the written notice is sent to an address, facsimile number or e-mail address of the party set forth herein (or subsequently provided by the party following the notice provisions herein).
   c. **When Broker Is Authorized to Accept Notice for Client:** Except where the Broker is acting in a dual agency capacity, the Broker and any affiliated licensee of the Broker representing a party in a client relationship shall be authorized agents of the party for the limited purpose of receiving notice and such notice to any of them shall for all purposes herein be deemed to be notice to the party. Notice to an authorized agent shall not be effective unless the written notice is sent to an address, facsimile number or e-mail address of the authorized agent set forth herein (or subsequently provided by the authorized agent following the notice provisions herein) even if it is not opened by the recipient. Except as provided for herein, the Broker's staff at a physical address set forth herein of the Broker or the Broker's affiliated licensees are authorized to receive notices delivered by a Delivery Service. The Broker, the Broker's staff and the affiliated licensees of the Broker shall not be authorized to receive notice on behalf of a party in any transaction in which a brokerage engagement has not been entered into with the party or in which the Broker is acting in a dual agency capacity. In the event the Broker is practicing designated agency, only the designated agent of a client shall be an authorized agent of the client for the purposes of receiving notice.

2. **Default.**    All Default provisions for this Agreement provisions are set forth in the below Special Stipulations.



3. **Risk of Damage to Property.** Seller warrants that at the time of closing the Property and all items remaining with the Property, if any, will be in substantially the same condition (including conditions disclosed in the Seller's Property Disclosure Statement or Seller's Disclosure of Latent Defects and Fixtures Checklist) as of the Offer Date, except for changes made to the condition of Property pursuant to the written agreement of Buyer and Seller. At time of possession, Seller shall deliver Property clean and free of trash, debris, and personal property of Seller not identified as remaining with the Property. Notwithstanding the above, if the Property is destroyed or substantially destroyed prior to closing, Seller shall promptly give notice to Buyer of the same and provide Buyer with whatever information Seller has regarding the availability of insurance and the disposition of any insurance claim. Buyer or Seller may terminate this Agreement without penalty not later than fourteen (14) days from receipt of the above notice. ~~If Buyer or Seller do not terminate this Agreement, Seller shall cause Property to be restored to substantially the same condition as on the Offer Date. The date of closing shall be extended, at the election of either Buyer, from the original date of closing to even (7) days from the date that Property has been restored to substantially the same condition as on the Offer Date and a new certificate of occupancy (if required) is issued.~~

4. **Other Provisions.**
    a. **Condemnation:** Seller shall: (1) immediately notify Buyer if the Property becomes subject to a condemnation proceeding; and (2) provide Buyer with the details of same. Upon receipt of such notice, Buyer shall have the right, but not the obligation for 7 days thereafter, to terminate this Agreement upon notice to Seller in which event Buyer shall be entitled to a refund of all earnest money and other monies paid by Buyer toward the Property without deduction or penalty. If Buyer does not terminate the Agreement within this time frame, Buyer agrees to accept the Property less any portion taken by the condemnation and if Buyer closes, Buyer shall be entitled to receive any condemnation award or negotiated payment for all or a portion of the Property transferred or conveyed in lieu of condemnation.
    b. **Consent to Share Non-Public Information:** Buyer and Seller hereby consent to the closing attorney preparing and distributing an American Land Title Association ("ALTA") Estimated Settlement Statement-Combined or other combined settlement statement to Buyer, Seller, Brokers and Brokers' affiliated licensees working on the transaction reflected in this Agreement for their various uses.
    c. **Duty to Cooperate:** All parties agree to do all things reasonably necessary to timely and in good faith fulfill the terms of this Agreement. Buyer and Seller shall execute and deliver such certifications, affidavits, and statements required by law or reasonably requested by the closing attorney, mortgage lender and/or the title insurance company to meet their respective requirements.
    d. **Electronic Signatures:** For all purposes herein, an electronic or facsimile signature shall be deemed the same as an original signature; provided, however, that all parties agree to promptly re-execute a conformed copy of this Agreement with original signatures if requested to do so by, the buyer's mortgage lender or the other party.
    e. **Entire Agreement, Modification and Assignment:** This Agreement constitutes the sole and entire agreement between all of the parties, supersedes all of their prior written and verbal agreements and shall be binding upon the parties and their successors, heirs and permitted assigns. No representation, promise or inducement not included in this Agreement shall be binding upon any party hereto. This Agreement may not be amended or waived except upon the written agreement of Buyer and Seller. Any agreement to terminate this Agreement or any other subsequent agreement of the parties relating to the Property must be in writing and signed by the parties. This Agreement may not be assigned by Buyer except with the written approval of Seller (SS611) which may be withheld for any reason or no reason. Any assignee shall fulfill all the terms and conditions of this Agreement.
    f. **Extension of Deadlines:** No time deadline under this Agreement shall be extended by virtue of it falling on a Saturday, Sunday or federal holiday except for the date of closing.
    g. **FIRPTA Affidavit:** Unless Seller is a "foreign person", as that term is defined in Section 1445(f)(3) of the Internal Revenue Code, Seller shall deliver to the closing attorney at Closing a FIRPTA (Foreign Investment in Real Property Tax Act) Affidavit indicating that Seller is not a "foreign person". If Seller is a "foreign person", additional taxes may need to be withheld at Closing.
    h. **GAR Forms:** The Georgia Association of REALTORS®, Inc. ("GAR") issues certain standard real estate forms. These GAR forms are frequently provided to the parties in real estate transactions. No party is required to use any GAR form. Since these forms are generic and written with the interests of multiple parties in mind, they may need to be modified to meet the specific needs of the parties using them. If any party has any questions about his or her rights and obligations under any GAR form, he or she should consult an attorney. Provisions in the GAR Forms are subject to differing interpretations by our courts other than what the parties may have intended. At times, our courts may strike down or not enforce provisions in our GAR Forms, as written. No representation is made that the GAR Forms will protect the interests of any particular party or will be fit for any specific purpose. The parties hereto agree that the GAR forms may only be used in accordance with the licensing agreement of GAR. While GAR forms may be modified by the parties, no GAR form may be reproduced with sections removed, altered or modified unless the changes are visible on the form itself or in a stipulation, addendum, exhibit or amendment thereto.
    i. **Governing Law and Interpretation:** This Agreement may be signed in multiple counterparts each of which shall be deemed to be an original and shall be interpreted in accordance with the laws of Georgia. No provision herein, by virtue of the party who drafted it, shall be interpreted less favorably against one party than another. All references to time shall mean the time in Georgia. If any provision herein is held to be unenforceable, it shall be severed from this Agreement while the remainder of the Agreement shall, to the fullest extent permitted by law, continue to have full force and effect as a binding contract.
    j. **No Authority to Bind:** No Broker or affiliated licensee of Broker, by virtue of this status, shall have any authority to bind any party hereto to any contract, provisions therein, amendments thereto, termination thereof or to notices signed by Broker but not the party. However, if authorized in this Agreement, Broker shall have the right to accept notices on behalf of a party (but not send notices from Broker on behalf of a party unless they are signed by the party). Additionally, any Broker or real estate licensee involved in this transaction may perform the ministerial act of filling in the Binding Agreement Date. ~~In the event of a dispute over the Binding Agreement Date, it shall be resolved by a court or arbitrator having jurisdiction over the dispute, (i.e. the ministerial act of the Buyer and Seller, or by the Holder, but only in making a reasonable interpretation of the Agreement in disbursing earnest money.~~

**k. Notice of Binding Agreement Date:** The Binding Agreement Date shall be the date when a party to this transaction who has accepted an offer or counteroffer to buy or sell real property delivers notice of that acceptance to the party who made the offer or counteroffer in accordance with the Notices section of the Agreement. Notice of the Binding Agreement Date may be delivered by either party (or the Broker working with or representing such party) to the other party. If notice of accurate Binding Agreement Date is delivered, the party receiving notice shall sign the same and immediately return it to the other party. Notwithstanding any other provision to the contrary contained in this Agreement, it is the express intent of this section that (1) a broker or licensee involved in the real estate transaction may perform the ministerial task of filling in the Binding Agreement Date and (2) sending a fully signed purchase and sale agreement with a specific Binding Agreement Date included, that one of the parties has agreed to, constitutes notice of the Binding Agreement Date to the other party.

**l. Objection to Binding Agreement Date:** If the Buyer or Seller objects to the date entered as the Binding Agreement Date, then within one (1) day from receiving notice of Binding Agreement Date, the party objecting shall send notice of the objection to the other party. The objection shall be resolved by the written amendment between the Buyer and Seller by executing a binding agreement date confirmation (F733). The absence of an agreement on the Binding Agreement Date shall not render this Agreement unenforceable. The failure of a party to timely object will result in the parties accepting the Binding Agreement Date as entered.

**m. Rules for Interpreting This Agreement:** In the event of internal conflicts or inconsistencies in this Agreement, the following rules for how those conflicts or inconsistencies shall be resolved will apply:
(1) Handwritten changes shall control over pre-printed or typed provisions;
(2) Exhibits shall control over the main body of the Agreement;
(3) Special Stipulations shall control over both exhibits and the main body of the Agreement;
(4) Notwithstanding the above, any amendatory clause in an FHA or VA exhibit shall control over inconsistent or conflicting provisions contained in a special stipulation, another exhibit or the main body of the Agreement.

**n. Statute of Limitations:** All claims of any nature whatsoever against Broker(s) and/or their affiliated licensees, whether asserted in litigation or arbitration and sounding in breach of contract and/or tort, must be brought within two (2) years from the date any claim or cause of action arises. Such actions shall thereafter be time-barred.

**o. Survival of Agreement:** The following shall survive the closing of this Agreement: (1) the obligation of a party to pay a real estate commission; (2) any warranty of title; (3) all written representations of Seller in this Agreement regarding the Property or neighborhood in which the Property is located; (4) Buyer's indemnification obligations arising out of the inspection of the Property by Buyer and Buyer's representatives; (5) the section on condemnation; (6) the section on attorney's fees; (7) the obligations of the parties regarding ad valorem real property taxes; and (8) any obligations which the parties herein agree shall survive the closing or may be performed or fulfilled after the Closing.

**p. Terminology:** As the context may require in this Agreement: (1) the singular shall mean the plural and vice versa; and (2) all pronouns shall mean and include the person, entity, firm, or corporation to which they relate.

**q. Time of Essence:** Time is of the essence of this Agreement.

5. <u>**Definitions.**</u>
**a. Banking Day:** A "Banking Day" shall mean a day on which a bank is open to the public for carrying out substantially all of its banking functions. For purposes herein, a "Banking Day" shall mean Monday through Friday excluding federal holidays.
**b. Binding Agreement Date:** The "Binding Agreement Date" shall be the date when a party to this transaction who has accepted an offer or counteroffer to buy or sell real property delivers notice of that acceptance to the party who made the offer or counteroffer in accordance with the Notices section of the Agreement. Once that occurs, this Agreement shall be deemed a Binding Agreement.
**c. Broker:** In this Agreement, the term "Broker" shall mean a licensed Georgia real estate broker or brokerage firm and its affiliated licensees unless the context would indicate otherwise.
**d. Business Day:** A "Business Day" shall mean a day on which substantially all businesses are open for business. For all purposes herein, a "Business Day" shall mean Monday through Friday excluding federal holidays.
**e. Day:** For the purposes of this Agreement, the term "Day" shall mean a full calendar day ending at 11:59 p.m., except as may be provided for elsewhere herein. For the purposes of counting days for determining deadlines, the specific date referenced as either the Binding Agreement Date or the date from which the deadline shall be counted will be day zero.
**f. Material Relationship:** A material relationship shall mean any actually known personal, familial, social, or business relationship between the broker or the broker's affiliated licensees and any other party to this transaction which could impair the ability of the broker or affiliated licensees to exercise fair and independent judgment relative to their client.
**g. Use of Initials "N/A":** The use of the initials "N/A" or "N.A." in filling out a blank in this Agreement shall mean "not applicable".

6. <u>**WARNING TO BUYERS AND SELLERS:**</u> **BEWARE OF CYBER-FRAUD.** Fraudulent e-mails attempting to get the buyer and/or seller to wire money to criminal computer hackers are increasingly common in real estate transactions. Specifically, criminals are impersonating the online identity of the actual mortgage lender, closing attorney, real estate broker or other person or companies involved in the real estate transaction. In that role, the criminals send fake wiring instructions attempting to trick buyers and/or sellers into wiring them money related to the real estate transaction, including, for example, the buyer's earnest money, the cash needed for the buyer to close, and/or the seller's proceeds from the closing. These instructions, if followed, will result in the money being wired to the criminals. In many cases, the fraudulent email is believable because it is sent from what appears to be the email address/domain of the legitimate company or person responsible for sending the buyer or seller wiring instructions. The buyer and/or seller should verify wiring instructions sent by email by independently looking up and calling the telephone number of the company or person purporting to have sent them. Buyers and sellers should never call the telephone number provided with wiring instructions sent by email since they may end up receiving a fake verification from the criminals. Buyer and sellers should be on special alert for: 1) emails directing the buyer and/or seller to wire money to a bank or bank account in a state other than Georgia; and 2) emails from a person or company involved in the real estate transaction that are slightly different (often by one letter, number, or character) from the actual email address of the person or company.

**7. LIMIT ON BROKER'S LIABILITY.** BUYER AND SELLER ACKNOWLEDGE THAT BROKER(S):

    **a.** SHALL, UNDER NO CIRCUMSTANCES, HAVE ANY LIABILITY GREATER THAN THE AMOUNT OF THE REAL ESTATE COMMISSION PAID HEREUNDER TO BROKER (EXCLUDING ANY COMMISSION AMOUNT PAID TO A COOPERATING REAL ESTATE BROKER, IF ANY) OR, IF NO REAL ESTATE COMMISSION IS PAID TO BROKER, THEN THE SUM OF $100; AND

    **b.** NOTWITHSTANDING THE ABOVE, SHALL HAVE NO LIABILITY IN EXCESS OF $100 FOR ANY LOSS OF FUNDS AS THE RESULT OF WIRE OR CYBER FRAUD.

**8. Exhibits and Addenda.** All exhibits and/or addenda attached hereto, listed below, or referenced herein are made a part of this Agreement.

- ☐ Back-up Agreement Contingency Exhibit (F604) "_____"
- ☑ Closing Attorney Acting as Holder of Earnest Money Exhibit (F510) "___B___"
- ☐ Community Association Disclosure Exhibit (F322) "_____"
- ☐ Condominium Resale Purchase and Sale Exhibit (F204) "_____"
- ☐ Conventional Loan Contingency Exhibit (F404) "_____"
- ☐ FHA Loan Contingency Exhibit (F407) "_____"
- ☐ Lead-Based Paint Exhibit (F316) "_____"
- ☐ Lease Purchase and Sale Exhibit (F207) (to be used with F916) "_____"
- ☐ Lease for Lease/Purchase Agreement (F916) (to be used with F207) "_____"
- ☑ Legal Description Exhibit (F807 or other) "___C___"
- ☐ Loan Assumption Exhibit (F416) "_____"
- ☒ No Financing Contingency Exhibit (F401) "___A___"
- ☐ Sale or Lease of Buyer's Property Contingency Exhibit (F601) "_____"
- ☐ Seller's Property Disclosure Statement Exhibit (F301, F302, F304, F307 or F310) "_____"
- ☐ Survey of Property as Exhibit "_____"
- ☐ Temporary Occupancy Agreement for Seller after Closing Exhibit (F219) "_____"
- ☐ USDA-RD Loan Contingency Exhibit (F413) "_____"
- ☐ VA Loan Contingency Exhibit (F410) "_____"
- ☒ Other ___Proof of Funds___

**SPECIAL STIPULATIONS:** The following Special Stipulations are made a part of this Agreement.

1. Buyer acknowledges and understands that the offer contemplated by this Agreement is subject to higher and better offers.

2. Seller shall have no duty or obligation to close the sale, as contemplated by this Agreement, until: (a) the entry of an order on the docket in the Chapter 7 bankruptcy case of Larry Darnell Gore, Jr. (Case No. 21-51345-JRS) by the United State Bankruptcy Court, Northern District of Georgia, Atlanta Division (the **"Bankruptcy Court"**) approving the sale of the interest in the bankruptcy estate of Larry Darnell Gore, Jr. (Case No. 21-51345-JRS) (the **"Estate"**) in the Property to Buyer, or substitute party (the**"Approval Order"**); and (b) the Approval Order becoming a Final Order.

As used in this Agreement or the exhibits hereto, **"Final Order"** means an order of the Bankruptcy Court (1) which contains language to the effect that under Rule 6004(h) of the Bankruptcy Rules, the order shall be effective and enforceable upon entry, or (2) if the order does not contain such language, an order (i) for which any appeal that has been taken has been finally determined or dismissed, or (ii)for which the time for appeal has expired and no appeal had been filed timely.

3. In the event of any material default of the terms of this Agreement, Buyer and Seller shall have the following as their respective sole remedies:

    a. In the event of an uncured material default by Buyer, Seller shall have the right to terminate this Agreement and retain the Earnest Money.

    b. In the event of an uncured material default by Seller, Buyer shall have the right to terminate this Agreement and recover the Earnest Money.

4. Buyer and Seller agree that the Property is being sold "As is, Where is" (subject to any Due Diligence Period) and that Seller is not making and has not made any representations or warranties or any present or future covenants regarding the quality of title of the Estate in the the Property. At the closing of the sale contemplated by this Agreement, Seller will convey the Estate's interest in the Property via trustee deed.

5. If this Agreement is not earlier terminated, then in the event that the Bankruptcy Court (1) denies approval of this Agreement, or (2) fails to issue an Approval Order, then unless otherwise agreed to by Buyer and Seller in writing, this Agreement shall terminate and be of no further force or effect and the parties will be restored to their respective factual and legal positions which existed immediately prior to execution of this Agreement.

6. Buyer acknowledges and understands that Seller is a bankruptcy trustee, has never seen the Property, has never visited the Property, and has no personal knowledge or information about the Property.

7. If there are any lease restrictions on the Property, all deposits/Earnest Money shall be returned to Buyer and all other provisions of this Agreement shall be null and void.

☐ **Additional Special Stipulations (F246) are attached.**

**By signing this Agreement, Buyer and Seller acknowledge that they have each read and understood this Agreement and agree to its terms.**

| Buyer Acceptance and Contact Information | Seller Acceptance and Contact Information |
|---|---|

**Buyer Acceptance and Contact Information**

*Pho Huynh*

1 **Buyer's Signature**

Pho Huynh                                    05-12-2023
Print or Type Name                      Date

Buyer's Address for Receiving Notice

Buyer's Phone Number: ☐Cell  ☐Home  ☐Work

Buyer's E-mail Address

*Quoc Tran*

2 **Buyer's Signature**

Quoc Tran                                    05-12-2023
Print or Type Name                      Date

Buyer's Address for Receiving Notice

Buyer's Phone Number: ☐Cell  ☐Home  ☐Work

Buyer's E-mail Address

☐ Additional Signature Page (F267) is attached.

**Seller Acceptance and Contact Information**

1 **Seller's Signature**

S.Gregory Hays, as and only as Chapter 7 Trustee for bankruptcy estate of Larry D. Gore, Jr.
(Case No. 21-51345-JRS)
Print or Type Name                      Date

2964 Peachtree Road, Suite 555, Atlanta, GA 30305
Seller's Address for Receiving Notice

404-926-0060
Seller's Phone Number: ☐Cell  ☐Home  ☐Work

mbargar@rlkglaw.com
Seller's E-mail Address

2 **Seller's Signature**

Print or Type Name                      Date

Seller's Address for Receiving Notice

Seller's Phone Number: ☐Cell  ☐Home  ☐Work

Seller's E-mail Address

☐ Additional Signature Page (F267) is attached.

**Buyer's Broker/Affiliated Licensee Contact Information**

US Great Homes Realty, LLC
Buyer Brokerage Firm

*Leo Khoi Nguyen*                          05-12-2023
Broker/Affiliated Licensee Signature      Date

Leo Khoi Nguyen          409002
Print or Type Name       GA Real Estate License #

404-369-7111
Licensee's Phone Number     Fax Number

khoi.nguyen.realtor@gmail.com
Licensee's E-mail Address

Atlanta REALTORS ® Association
REALTOR® Membership

1630 Pleasant Hill RD, Suite B-6, Duluth, GA 30096
Broker's Address

404-369-5757                  678-826-0629
Broker's Phone Number        Fax Number

USGH01                       H-77985
MLS Office Code              Brokerage Firm License Number

**Seller's Broker/Affiliated Licensee Contact Information**

Humphries & King Realty
Seller Brokerage Firm

*John Ball*                                 dotloop verified
                                            05/12/2024 4:29 PM EDT
                                            6SOY-AU4P-ACZG-DS38
Broker/Affiliated Licensee Signature      Date

John Ball                386751
Print or Type Name       GA Real Estate License #

(404) 418-2772
Licensee's Phone Number     Fax Number

John@HKAtlanta.com
Licensee's Email Address

REALTOR® Membership

830 Glenwood Ave., Suite 510-205, Atlanta, GA 30316
Broker's Address

(404) 720-2965
Broker's Phone Number        Fax Number

HKRL01                       H-76339
MLS Office Code              Brokerage Firm License Number

**Binding Agreement Date:** The Binding Agreement Date in this transaction is the date of _____  **05/12/2023**
and has been filled in by _____ **John Ball** _____.

Copyright© 2023 by Georgia Association of REALTORS®, Inc.

# NO FINANCING CONTINGENCY
## EXHIBIT " A "



**2023 Printing**

This Exhibit is part of the Agreement with an Offer Date of _____ 4/30/2023 _____ for the purchase and sale of that certain
Property known as: _____ 198 Melody Lane _____, _____ Lawrenceville _____, Georgia 30043 .

**1. Method of Purchase**

**A.** ☐ **All Cash Purchase:** Buyer has sufficient liquid assets to purchase the Property in this transaction for "all cash". The Buyer has no right to unilaterally extend the Closing date for eight (8) days for reason of mortgage lender delay. Notwithstanding the above, Buyer shall have the right to extend the closing date for eight (8) days if the closing attorney is not ready except if the basis for the closing attorney not being ready is due to or related to the mortgage lender delay.

**OR**

**B.** ☑ **Financed Purchase with No Financing Contingency:** Buyer intends to obtain mortgage financing to pay for all or a portion of the sales price of the Property; provided, however, this Agreement shall not be subject to a financing contingency. Even though Buyer is obtaining a mortgage loan, the Buyer has no right to unilaterally extend the Closing date for eight (8) days for reason of mortgage delay. Notwithstanding the above, Buyer shall have the right to extend the closing date for eight (8) days if the closing attorney is not ready except if the basis for the closing attorney not being ready is due to or related to the mortgage lender delay.

**2. Verification of Funds.** Within ___ 1 ___ days from the Binding Agreement Date, Buyer shall be obligated to provide or cause to be provided to Seller information describing in specific detail the source of all Buyer's funds necessary to purchase the Property ("Required Information"). The Required Information shall consist of one or more of the following:
**A.** A letter or letters from a trust, stock brokerage firm and/or financial institution holding funds, stocks, bonds and/or other assets (hereinafter collectively referred to as "Assets") of or on behalf of Buyer and dated subsequent to the Binding Agreement Date stating that Buyer has funds in US Dollars of at least an amount specified in the letter and/or Assets on deposit with the institution of a value specified in the letter, that are sufficient to allow Buyer to complete the purchase of the Property;
**B.** An account statement or statements from the trust, stock brokerage firm and/or financial institution(s) holding funds and/or Assets confirming a specific amount of funds in US Dollars on deposit with the institution. Such account statement must be for the regular time period that such statements are issued immediately preceding the Binding Agreement Date.
**C.** If Option 1(B) is selected above, a loan commitment letter from a mortgage lender.

**3. Authorization and Security.** Buyer does hereby authorize Seller and Listing Broker to communicate with any person providing information regarding Buyer's source of funds to purchase the Property to verify such information and to answer any questions Seller or Listing Broker may have regarding the source of Buyer's funds to purchase the Property. In providing any account statement to Seller, Buyer shall be entitled to delete or otherwise shield account numbers, social security numbers, telephone numbers and other information the release of which could jeopardize the security of the account or put the Buyer at greater risk of identity theft.

**4. Seller's Right to Terminate.** In the event Buyer fails to provide Seller with the Required Information within the timeframe set forth above, Seller shall notify Buyer of the default and give Buyer three (3) days from the date of the delivery of the notice to cure the same. If Buyer does not timely cure the default, Seller may terminate this Agreement within seven (7) days thereafter due to Buyer's default upon notice to Buyer. In the event Seller does not terminate this Agreement within that timeframe, the right to terminate on this basis shall be waived.

**5. Appraisal Contingency.** In addition to the other rights of Buyer set forth herein, this Agreement ☐ shall or ☑ shall not be subject to the Property appraising for at least the purchase price. Buyer shall have the rights set forth in this exhibit in the event the Property does not appraise for at least the purchase price in accordance with the terms and conditions set forth below:
**A. Type of Appraisal:** The appraisal shall be a "certified appraisal" of the Property (as that term is defined in O.C.G.A. § 43-39A-2) performed or signed off by a licensed or certified appraiser (as those terms are defined in the rules and regulations of the Georgia Real Estate Appraiser's Board) and include a statement that the appraiser performed an "independent appraisal assignment" (as that term is defined in O.C.G.A. § 43-39A-2(24)) with respect to the Property.
**B. Selection of Appraiser:** The appraiser shall be selected by *[Select one. The sections not selected shall not be a part of this Agreement.]:* ☐ Buyer, ☐ Seller, OR ☐ Other (_____); and all parties agree that this appraiser shall only perform a single certified appraisal of the Property.

**THIS FORM IS COPYRIGHTED AND MAY ONLY BE USED IN REAL ESTATE TRANSACTIONS IN WHICH _____ Khoi Nguyen _____ IS INVOLVED AS A REAL ESTATE LICENSEE. UNAUTHORIZED USE OF THE FORM MAY RESULT IN LEGAL SANCTIONS BEING BROUGHT AGAINST THE USER AND SHOULD BE REPORTED TO THE GEORGIA ASSOCIATION OF REALTORS® AT (770) 451-1831.**
Copyright© 2023 by Georgia Association of REALTORS®, Inc.          F401, All Cash Sale Exhibit, Page 1 of 2, 01/01/23

C. **Rights of Buyer If Property Does Not Appraise:** If any appraisal performed pursuant to and in accordance with this exhibit is for less than the purchase price of the Property, the Buyer shall have the right to request within ____0____ days from the Binding Agreement Date that Seller reduce the sales price of the Property to a price not less than the appraisal price by submitting an Amendment to Sales Price ("ATSP") to Seller along with a complete copy of the appraisal which is for less than the purchase price. In the event that Buyer does not submit an ATSP within the time frame referenced above, Buyer shall be deemed to have waived Buyer's right to request a reduction in the sales price and this Agreement shall no longer be subject to an appraisal contingency. The time limit of the offer for the Seller to accept or reject the ATSP shall run through the earlier of: (1) three (3) days from the date that the ATSP is delivered to Seller; or (2) the time of closing (excluding any extensions of the closing resulting from the unilateral extension of the closing date).

If Seller does not accept the ATSP, Buyer shall have the right, but not the obligation, to terminate this Agreement without penalty upon notice to Seller, provided that such notice is given within three (3) days of the earlier of: (a) the date that Buyer receives notice that Seller has not accepted the ATSP; or (b) the last date Seller could have accepted the ATSP. In neither circumstance shall the Buyer's right to terminate extend beyond the time of closing.

D. **Buyer Not Obligated to Seek Price Reduction:** Nothing herein shall require Buyer to seek any reduction in the sales price of the Property. If Buyer does not seek a reduction in the sales price, Buyer shall be obligated to purchase the Property for the price agreed to by the parties in the Agreement.

Buyer's Initials:   _____          Seller's Initials: _____

# CLOSING ATTORNEY ACTING AS
# HOLDER OF EARNEST MONEY
## EXHIBIT " B "
**[Closing Attorney must still consent to serve as Holder using F511]**


*Georgia*REALTORS®

**2023 Printing**

This Exhibit is part of the Agreement with an Offer Date of _____4/30/2023_____ for the purchase and sale of that certain property known as: 198 Melody Lane _____ Lawrenceville _____, Georgia _____30043_____ ("Agreement").

1. **Closing Attorney Shall Act as Holder.** The Closing Attorney named in this Agreement shall be the Holder of the earnest money and other trust funds referenced in this Agreement subject to the Closing Attorney timely: a) agreeing to serve; b) signing the appropriate documents; and c) timely delivering the same to Buyer and Seller as more particularly described below.

2. **Buyer Must Timely Deliver Certain Documents to Closing Attorney Acting as Holder of Earnest Money.** When the Closing Attorney has been named as Holder in the Agreement, Buyer must deliver to Closing Attorney within two (2) business days from the Binding Agreement Date: a) the fully-signed and executed Agreement in its entirety ("Entire Contract"); and b) a copy or copies of the Escrow Agreement (F511) for the Closing Attorney to sign agreeing to become the Holder. Buyer must similarly deliver to Holder all amendments to the Entire Contract within two (2) business days of the date that the Amendment becomes binding.

3. **Closing Attorney Must Agree to Become Holder Within Three (3) Business Days of Receiving Entire Contract.** The Closing Attorney named as Holder shall not become the Holder unless within three (3) business days from the date that the Closing Attorney receives the Entire Contract, the Closing Attorney has: a) countersigned the Agreement of Closing Attorney to serve as Holder (GAR Form F511, and sometimes referred to as "Escrow Agreement") without change or modification so except for filling in the blanks contained therein; and b) delivered the same to Buyer and Seller. When this occurs, Closing Attorney's rights and duties as Holder and the timeframe for completing the same shall commence.

4. **Rights and Duties of Closing Attorney Acting as Holder.** Notwithstanding any provision to the contrary contained in the Agreement, Closing Attorney acting as Holder shall have all of the pre-printed rights and duties of Holder set forth in the GAR Purchase and Sale Agreement (a copy of which is incorporated herein by reference), regardless of whether such rights and duties are set forth in this Agreement. In the event of a conflict between this Agreement and the pre-printed right and duties of Holder set forth in the GAR Purchase and Sale Agreement, the latter shall control unless otherwise agreed to in writing by Buyer, Seller, and Holder. In the event the transaction does not close, Closing Attorney shall not have a right to deduct any of attorney's costs or fees pertaining to the Closing from the earnest money or other trust funds being held by Closing Attorney, except as may be provided elsewhere herein.

5. **Earnest Money Must Be Paid to Closing Attorney Acting as Holder by Wire Transfer.** Buyer shall be responsible for paying all earnest money and other Buyer trust funds to the Closing Attorney acting as Holder by wire transfer of immediately available funds or by such other method deemed acceptable and/or required by Closing Attorney, as the case may be.

6. **Failure of Closing Attorney to Become Holder.** If the Closing Attorney named as Holder has not become Holder because the Closing Attorney rejects being the Holder or fails to timely become Holder, then: a) the Alternate Holder named below, who must be a broker in this transaction, shall automatically become the Holder instead of the Closing Attorney; b) all parties consent to the earnest money being paid or transferred to the Alternate Holder; and c) all parties shall cooperate with one another to sign any documents required to accomplish the same. The signature of the Alternate Holder to the Agreement at the time it is first signed shall be deemed consent of the Alternate Holder to serve as Holder. The Alternate Holder's duties and the timeline for performing those duties shall commence when the Alternate Holder becomes the Holder.

7. **Alternate Holder.** The Buyer must immediately notify all parties if the Closing Attorney fails to become Holder. The Alternate Holder, who must be a broker in this transaction, shall be _____None_____

   In the event an Alternate Holder is not named, the Alternate Holder shall be the Buyer's Broker.

8. **Closing Attorney Holding Earnest Money in All-Cash Transaction.** In an all-cash transaction where the Closing Attorney is representing the Buyer or Seller, the Closing Attorney can hold the earnest money (and other trust funds), but in the event of a dispute between the parties regarding the disbursement of the funds, the Closing Attorney shall not disburse the funds based upon a reasonable interpretation of the Agreement. Instead and notwithstanding any provision to the contrary contained in this agreement, in the event of a dispute regarding the earnest money in an all-cash transaction where the Closing Attorney is representing the Buyer or Seller, the only remedy available to the Closing Attorney to resolve the dispute regarding the disbursement of earnest money shall be to interplead the funds into a court of competent jurisdiction.

9. **Notices To and From Holder.** The notice procedures in the Agreement shall control with regard to all notices to and from Holder. Holder's contact information is set forth in signature pages to this Agreement.

10. **Closing Attorney's Contact Information.** The Closing Attorney named below shall be the Holder in this transaction.

    Closing Attorney: Campbell & Brannon - Glenridge _____
    Address: Glenridge Highlands One _____
    5565 Glenridge Con. #350, Atlanta, GA 30342 _____
    Phone Number: (770) 396-8535 _____
    Fax Number: _____
    Email: Glenorders@cb.law _____

Buyer's Initials: [TH] [QT]          Seller's Initials: [signature]

THIS FORM IS COPYRIGHTED AND MAY ONLY BE USED IN REAL ESTATE TRANSACTIONS IN WHICH John Ball IS INVOLVED AS A REAL ESTATE LICENSEE. UNAUTHORIZED USE OF THE FORM MAY RESULT IN LEGAL SANCTIONS BEING BROUGHT AGAINST THE USER AND SHOULD BE REPORTED TO THE GEORGIA ASSOCIATION OF REALTORS® AT (770) 451-1831.
Copyright© 2023 by Georgia Association of REALTORS®, Inc.          F510, Closing Attorney Acting as Holder of Earnest Money Exhibit, 01/01/23

Exhibit C

All that tract or parcel of land lying and being in Land Lot 29 of the 7th District, Gwinnett County, Georgia, being Lot 14, Block C, Collins Hill Heights Subdivision, Unit III, as per plat recorded in Plat Book 70, Page 27, Gwinnett County, Georgia records, which recorded plat is incorporated herein by this reference and made a part of this description.

Being 198 MELODY LANE, Lawrenceville, Georgia 30043

Tax ID: R7029 347

# xBerkshireBank ·

PO Box 1308, Pittsfield, MA 01202

## Statement of Account

**Last statement:** March 1, 2023
**This statement:** March 31, 2023
**Total days in statement period: 31**

0052104793          Page 1 of 1

Direct inquiries to:
800-773-5601     OR
BERKSHIREBANKCOM

Berkshire Bank
PO Box 1308
Pittsfield, MA 01202-1308

QUOC  B TRAN
PHO HUYNH

0

## Summary of Account Balance

| Account | Number | Ending Balance |
|---|---|---|
| Money Market | | $443,647.26 |

dotloop signature verification: dtlp.us/WMw4-iASw-JbW7

# AMENDMENT TO AGREEMENT
## AMENDMENT # ___1___



**Date:** _____ 5/17/2023 _____

**2023 Printing**

**Whereas**, the undersigned parties have entered into a certain Agreement between _Pho Huynh, Quoc Tran_____
_____ ("Buyer") and S. Gregory Hays, as and only as Chapter 7 Trustee for bankruptcy ("Seller"),
estate of Larry D. Gore, Jr. (Case No. 21-51345-JRS)
with a Binding Agreement Date of _____ 5/12/2023 _____ for the purchase and sale of real property located at:
_198 Melody Lane_____, _Lawrenceville_____, Georgia _30043_____ ; and

**Whereas**, the undersigned parties desire to amend the aforementioned Agreement, it being to the mutual benefit of all parties to do so;

Now therefore, for and in consideration of the sum of Ten Dollars ($10.00) and other valuable considerations paid by each to the other, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree to modify and amend the aforementioned Agreement as follows: [Note: The following language is furnished by the parties and is particular to this transaction.]
All parties acknowledged and agreed:
1. The sale price will be $304,000.00
3. If this Amendment is not executed, it will serve as the termination notice per Unilateral Notice to Terminate Purchase and Sale Agreement. All Earnest Money will return back to Buyer in full.

☐ **Additional pages (F801) are attached.**

It is agreed by the parties hereto that all of the other terms and conditions of the aforementioned Agreement shall remain in full force and effect other than as modified herein. Upon execution by all parties, this Amendment shall be attached to and form a part of said Agreement.

**By signing this Amendment, Buyer and Seller acknowledge that they have each read and understood this Amendment and agree to its terms.**

_Pho Huynh_____          _S. Gregory Hays, as Chapter 7 Trustee for the_    dotloop verified
**1 Buyer's Signature**                                      _bankruptcy of Larry Gore Jr._                        05/17/23 6:34 PM EDT
                                                                                                                           YRRC-XQ4O-ILWR-KNKX
                                                        **1 Seller's Signature**

_Quoc Tran_____          _____
**2 Buyer's Signature**                                    **2 Seller's Signature**

☐ **Additional Signature Page (F267) is attached.**      ☐ **Additional Signature Page (F267) is attached.**

_US Great Homes Realty, LLC_____      _Humphries & King Realty, LLC._____
Buyer Brokerage Firm                                       Seller Brokerage Firm

_Leo Khoi Nguyen_____          _John Ball_____     dotloop verified
**Broker/Affiliated Licensee Signature**              **Broker/Affiliated Licensee Signature**    05/17/23 6:38 PM EDT
                                                                                                                     JSPE-JUEL-UABV-B26F

_Atlanta REALTORS® Association_____      _____
REALTOR® Membership                                       REALTOR® Membership

**Acceptance Date.** The above Amendment is hereby accepted, _____ 6:38 _____ o'clock _____ **p**.m. on the date of _____ 05/17/2023 _____ , ("Acceptance Date"). This Amendment will become binding upon the parties when notice of the acceptance of the Amendment has been received by offeror. The offeror shall promptly notify offeree when acceptance has been received.

THIS FORM IS COPYRIGHTED AND MAY ONLY BE USED IN REAL ESTATE TRANSACTIONS IN WHICH _____Khoi Nguyen_____ IS INVOLVED AS A REAL ESTATE LICENSEE. UNAUTHORIZED USE OF THE FORM MAY RESULT IN LEGAL SANCTIONS BEING BROUGHT AGAINST THE USER AND SHOULD BE REPORTED TO THE GEORGIA ASSOCIATION OF REALTORS® AT (770) 451-1831.
Copyright© 2023 by Georgia Association of REALTORS®, Inc.                                        F701, Amendment to Agreement, 01/01/23

**EXHIBIT "B" FOLLOWS**

Date of Completion: 12/7/2021

Date of Invoice: 1/3/2021

**Customer Information:**

Larry Gore

198 Melody Lane

Lawrenceville, GA 30043

404.909.6809

Larry.D.Gore@gmail.com

# PEACEMAKER
## CONTRACTORS, LLC
### Professional & Quality Roofing

## **CUSTOMER INVOICE**

Travelers Claim #: INU6478

Work complete as per scope of contract and/ or insurance summary:

| | |
|---|---|
| Insurance Base | $7,389.36 |

- All repairs completed per contracted signed/ dated 11/1/2021
- Installed new LVP – Aspire Accolade
  - Kitchen w/ closet
  - Dining Room
  - Family Room
  - Upstairs Hallway
  - Foyer/ entry
  - Downstairs Hallway
- Installed new baseboard where missing
- Install new quarter round
- Repaired ceiling in garage
  - New texture
  - Painted ceiling

| | |
|---|---|
| Supplements Items Paid by Insurance | $6,044.92 |

- Price List Update
- Painted Walls
- O&P application
- Garage line items
- Other misc. line items

| | |
|---|---|
| Additional Charges | $549.56 |

- New carpet on stairs at entry/ foyer – Cordova Salty Air

| | |
|---|---|
| **TOTAL DUE** | **$13,983.84** |

Send Payment(s) to:

Peacemaker Contractors, LLC

P.O. Box 2242

Loganville, GA 30052

Please issue payment(s) at your earliest convenience. If there are any questions, please contact the representative listed below. Thank you for your business!!

Appreciatively,

Will Collins

Peacemaker Contractors, LLC

770.891.5245

## CERTIFICATE SERVICE

This is to certify that I, Michael J. Bargar, am over the age of 18 and that on this day I have caused to be served a copy of the forgoing *Trustee's Motion for (I) Authority to (A) Sell Property of the Bankruptcy Estate Free and Clear of All Liens, Interests and Encumbrances, and (B) Disburse Certain Proceeds at Closing; and (II) Allowance and Authority to Pay Administrative Expense Claim* by depositing in the United States mail a copy of same in a properly addressed envelope with adequate postage affixed thereon to assure delivery by first class United States Mail and/or certified mail, as indicated, to the following persons at the addresses stated:

**First Class Mail**
Office of the United States Trustee
362 Richard B. Russell Bldg.
75 Ted Turner Drive, SW
Atlanta, GA 30303

**First Class Mail**
Navy Federal Credit Union
PO Box 23800
Merrifield, VA 22119-3800

**First Class Mail**
Navy Federal Credit Union
Attn: Josephine E. Salmon
Aldridge Pite, LLP
4375 Jutland Drive, Suite 200
PO Box 17933
San Diego, CA 92177-0933

**First Class Mail**
MidFirst Bank
Bankruptcy Department
999 NW Grand Blvd
Oklahoma City, OK 73118

**First Class Mail**
MidFirst Bank
Attn: Heather D. Bock
McCalla Raymer Leibert Pierce, LLC
1544 Old Alabama Road
Roswell, GA 30076

**First Class Mail**
Denise R. Mitchell, MPA
Gwinnett County Justice & Administration Center
Tax Commissioner's Office
75 Langley Drive
Lawrenceville, GA 30046

**First Class Mail**
Denise R. Mitchell, MPA
Gwinnett County Tax Commissioner
PO Box 372
Lawrenceville, GA 30046-0372

**First Class Mail**
Michael Campbell
Attention: Denise Hammock
Campbell & Brannon, LLC
5565 Glenridge Connector, Suite 350
Atlanta, GA 30342

**First Class Mail**
John V. Ball
Humphries & King Realty
830 Glenwood Avenue
Suite 510-205
Atlanta, GA 30316

**First Class Mail**
John Gerard Brookhuis
Brookhuis Law, LLC
1350 Scenic Hwy
Ste 266
Snellville, GA 30078

**First Class Mail**
Larry Darnell Gore, Jr.
198 Melody Lane
Lawrenceville, GA 20043

**First Class Mail**
Peacemaker Contractors LLC
c/o William Collins
5025 Victoria Park Drive
Loganville, GA 30052

**First Class Mail**
Internal Revenue Service
P.O. Box 21126
Philadelphia, PA 19114

**First Class Mail**
Lisa D. Smith
Bankruptcy Specialist
Internal Revenue Service
401 W. Peachtree ST, NW
M/S 334-D
Atlanta, GA 30308-3539

**First Class Mail**
Internal Revenue Service
P.O. Box 7346
Philadelphia, PA 19101-7346

**First Class Mail**
Internal Revenue Service
401 W. Peachtree Street, N.W.
Stop 334-D
Atlanta, GA 30308

**First Class Mail**
Department of Justice, Tax Division.
Civil Trial Section, Southern Region
P. O. Box 14198
Ben Franklin Station
Washington, D. C. 20044

**First Class Mail**
United States Attorney General
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530-0001

**First Class Mail**
Georgia Department of Revenue
Compliance Division
ARCS - Bankruptcy
1800 Century Blvd NE, Suite 9100
Atlanta, GA 30345-3202

**First Class Mail**
Michaelle Pretlow
198 Melody Lane
Lawrenceville, GA 30043

**First Class Mail**
Douglas Pretlow
198 Melody Lane
Lawrenceville, GA 30043

This 19th day of May, 2023.

*/s/ Michael J. Bargar*
Michael J. Bargar
Georgia Bar No. 645709